## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUZANNE SLOAT,** | : | **Civil No. 1:19-CV-01595** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA—OFFICE OF** | : | |
| **INFORMATION TECHNOLOGY,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff, Suzanne Sloat, has filed the instant lawsuit against her former employer, the Commonwealth of Pennsylvania—Office of Information Technology ("OIT"). Sloat alleges that OIT violated the Americans with Disabilities Act when it terminated her employment. Specifically, Sloat claims OIT discriminated against her, retaliated against her requests for accommodations, and failed to reasonably accommodate her disability. OIT now moves for summary judgment, arguing it sufficiently accommodated Sloat's requests and that she presents no evidence that her disability motivated its termination of her employment. For the following reasons, we agree and will grant summary judgment in favor of OIT.

## II.    __Statement of Facts and of the Case__

OIT employed plaintiff Suzanne Sloat as a "Business Analyst 2" from July of 2018 to October 12, 2018. (Doc. 27, ¶¶ 1, 3; Doc. 1, ¶ 29). Sloat's chain of command consisted, in order of supervisory superiority, of Jeff Rogers, Dan Villanova, and Katie Hann. (Doc. 27, ¶ 4). Sloat suffered from severe anxiety and PTSD as a result of a past abusive marriage. (Doc. 1, ¶ 10; Doc. 27, ¶ 5). Although these conditions reportedly did not interfere with Sloat's ability to do active work, they "interfere[d] with how she respond[ed] to supervisory critique or perceived demeaning comments/behavior." (Doc. 1, Ex. D, at 18). To this end, Sloat informed Rogers and Hann of a weekly therapy appointment on her first day of work. (Id., ¶ 13). OIT did not originally require Sloat to request an accommodation for her appointments. (Id., ¶ 14; Doc. 27-3, at 17). This practice was later changed due to OIT's lack of a flex time policy. (Doc. 27-1, at 184).

Over the course of her brief employment, Sloat requested several accommodations related to her anxiety, beginning with a form she submitted on August 28, 2018. (Doc. 1, ¶ 22; Doc. 1, at 12). Sloat later withdrew this form. (Doc. 1, ¶ 23). Sloat submitted a new accommodation form on September 6, 2018, requesting that a job coach be permitted onsite two to three times a month; that "a female manager or supervisor [be present] during one-on-one meetings with her supervisor"; that a fan be permitted at her workspace to create white noise; and that

she be allowed an alternate work schedule that permitted her to attend her weekly therapy appointment. (Id., ¶ 26; Doc. 1, Ex. D, at 17). On September 21, 2018, OIT granted "all but the fourth of the accommodations." (Doc. 1, ¶ 27). In addressing the fourth request, OIT offered Sloat an alternate schedule that would allow her an hour-and-a-half-long lunch break to attend her appointment but Sloat declined this alternate schedule. (Doc. 27-1, at 201).

On August 31, 2018, Sloat attended a meeting with Rogers and Villanova. (Doc. 27-1, at 148). During the meeting, Rogers and Villanova sat next to one another and across from Sloat. (Id., at 150). The two discussed Sloat's office behavior, which in the past had included throwing a stress ball at her desk. (Id., at 152). Over the course of the conversation, Sloat indicated that she was frustrated. (Doc. 27-3, at 40; Doc. 27-1, at 153).

Following the meeting, Rogers and Villanova told Sloat that she could take a break to calm down, at which point Sloat returned to her workspace and threw a cup of water onto her desk. (Doc. 27-1, at 153-54). In response to a coworker who had been disturbed and inquired as to Sloat's wellbeing, Sloat responded, "This place sucks." (Doc. 27-7, at 7). She then left and went to the office of Human Resources analyst Jo Ann Slingwine, where she slammed the door and shouted about her meeting with her supervisors. (Id., at 3; Doc. 27-1, at 155). This conversation was audible to nearby coworkers. (Doc. 27-7, at 3). While Sloat was in Slingwine's

office, her supervisors reported her behavior to OIT's Human Resources department, which responded that a violence report would be filed. (Id., at 4).

At approximately 4:00p.m. the same day, Sloat entered the doorway to Hann's office and, while crying, complained loudly that she had been lied to about the nature of the earlier meeting. (Id.; Doc. 27-1, at 37-38, 170-71). Villanova, whose office was nearby, overheard the conversation and approached Sloat and attempted to calm her down. (Doc. 27-7, at 4, 5). Following this encounter, Sloat left the building for the day around 4:12 p.m. (Id., at 6).

On October 12, 2018, OIT terminated Sloat's employment, citing the August 31, 2018 incidents as violations of its workplace violence policy. (Doc. 27-6, at 2). Sloat contends that, although OIT's proffered reasoning accurately reflects her behavior, its termination of her employment was retaliatory, discriminatory, and based on a failure to accommodate her disability. (Doc. 1, ¶ 30; Doc. 30, at 1).

OIT now moves for summary judgment, arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. (Doc. 26). OIT asserts that Sloat has not demonstrated that her disability played a role in the termination of her employment, or that OIT failed to accommodate Sloat's requests related to her disability. For the following reasons, we agree, and we will grant summary judgment in favor of the defendant OIT.

4

### III.   Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F. Supp. 2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the

non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing

6

any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. of Newark New Jersey v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982); <u>see</u> <u>Sunshine Books, Ltd. v. Temple University</u>, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985) (citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility

7

determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

## B. **Elements of ADA Claims**

The purpose of the ADA is to "prevent employment discrimination of qualified individuals on account of their disability." Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502, 512 (E.D. Pa. 2012) (citing 42 U.S.C. § 12112(a)). The Act requires employers to make "reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability, unless the employer demonstrates that such accommodations would impose an

undue hardship in the operation of their business." Id. (quoting Fleck v. WILMAC, Corp., No. 10-5562, 2011 U.S. Dist. LEXIS 54039, at *10 (E.D. Pa. May 19, 2011)).

In order to make out a *prima facie* claim for workplace discrimination under the ADA, a plaintiff must demonstrate that she is (1) disabled within the meaning of the ADA, (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) has suffered an adverse employment decision as a result of the discrimination. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010); see also Stadtmiller v. UPMC Health Plan, Inc., 491 F. App'x 334, 336 (3d Cir. 2012); Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998). A disability can take the form of a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1).

If the plaintiff makes a *prima facie* showing under this three-part standard, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. See Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (noting that the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to ADA disparate treatment and retaliation claims). If a legitimate, nondiscriminatory reason is given, then the plaintiff must present evidence to demonstrate that the defendant's reasons were

pretext for its unlawful action.  Id.  The plaintiff may meet this burden by identifying evidence that allows a factfinder either to disbelieve the employer's articulated legitimate justification, or to conclude that an invidious discriminatory reason was more likely than not a "but for" cause of the employment action.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). This "but for" standard of causation sets an exacting benchmark for these claim.

The ADA also prohibits employers from retaliating against employees who oppose an act or practice made unlawful by the ADA or because the employee has made a charge under the ADA.  42 U.S.C. § 12203(a); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003) ("it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA.").  Although requesting a reasonable accommodation does not appear to "fit[ ] within the literal language of the statute," Soileua v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997), the Court of Appeals for the Third Circuit has held that making a good-faith request for an accommodation is protected activity for purposes of the ADA's anti-retaliation provision. Shellenberger, 318 F.3d at 191.

In order to make out a *prima facie* case of illegal retaliation under the ADA, a plaintiff must show (1) protected employee activity, (2) adverse action by the employer either after or contemporaneous with the employee's protected activity,

and (3) a causal relationship between the protected activity and the adverse action.

Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).  The same McDonnell Douglas burden-shifting framework described above with respect to ADA discrimination claims also applies to ADA retaliation claims.  In all cases involving retaliation, a plaintiff must prove that retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of the process.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997).  That burden always remains with the plaintiff.  Id.

Finally, under the Act an employer must provide reasonable accommodations to a disabled worker. In order to advance a failure to accommodate claim, the employee must satisfy a four-part test:

> "An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: '1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.' " Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 772 (3d Cir.2004) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319–20 (3d Cir.1999)).

Moore v. CVS Rx Servs., Inc., 142 F. Supp. 3d 321, 335 (M.D. Pa. 2015), aff'd, 660 F. App'x 149 (3d Cir. 2016).

In considering these ADA claims, it is important to note that all of these three claims all share a common component. Whether cast as a reasonable accommodation claim or brought under the rubric of discrimination or retaliation, an integral element to any ADA claim is some causal link between the plaintiff's disability and the defendant's allegedly wrongful act.

Guided by these legal benchmarks we turn to a consideration of Sloat's claims.

### C. **This Motion for Summary Judgment Should Be Granted.**

Sloat asserts her claims of discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. The ADA provides in relevant part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112.

After careful review of the facts, we conclude that Sloat has shown insufficient evidence to prove discrimination, retaliation, or failure to accommodate under the ADA. Accordingly, this motion for summary judgment will be granted.

1.  **The Plaintiff Has Not Presented a Sufficient Case of ADA Discrimination.**

Sloat first claims that OIT discriminated against her because of her disability when it terminated her employment. "To state a claim [for disability discrimination] under the ADA, an individual must (1) be disabled within the meaning of the ADA; (2) be otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) have suffered an adverse employment decision." Miller v. Univ. of Pittsburgh Med. Ctr., 350 F. App'x 727, 728-29 (3d Cir. 2009). The ADA's protections extend to all qualified individuals with disabilities, 42 U.S.C. § 12112(a). Qualified individuals with disabilities are defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that [the] individual holds or desires." Id., § 12111(8); Turner v. Hershey Chocolate USA, 440 F.3d 604, 608 (3d Cir. 2006). Thus, we begin our analysis with whether Sloat has presented sufficient evidence that she is a disabled person under the ADA.

"The ADA defines 'disability' as: (A) 'a physical or mental impairment that substantially limits one or more of the major life activities of such [an] individual'; (B) 'a record of such an impairment'; or (C) 'being regarded as having such an impairment.'" Kessler v. AT&T, 2015 WL 5598866, at *5 (M.D. Pa. Sept. 22, 2015) (quoting 42 U.S.C. § 12102(1)). The defendant concedes that Sloat's anxiety falls under this definition. (Doc. 28, at 6). Furthermore, Sloat has shown through

evaluations by her healthcare provider that her anxiety "interfere[s] with how she responds to supervisory critique or perceived demeaning comments/behavior." (Doc. 1, at 18). Such impairments adversely affect Sloat's ability to socialize and interact with others, which has been recognized as a major life activity. See R.B. v. Hollibaugh, 2017 WL 663735, at *14 (M.D. Pa. Feb. 1, 2017). Thus, Sloat has presented sufficient evidence to show she has a disability.

We similarly conclude that Sloat was qualified to perform the essential functions of her job. Under the ADA, the EEOC regulations divide the question of whether an individual is qualified for his or her position into two parts: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." Turner, 440 F.3d at 611 (citing 29 C.F.R. § 1630.2(n)); see also Bisker v. GGS Info. Servs., 2010 U.S. Dist. LEXIS 53879, *5 (M.D. Pa. June 2, 2010). Sloat holds both undergraduate and graduate degrees and has testified to past employment as an information management consultant, an application analyst, and a business consultant. (Doc. 27-1, at 6-7, 8, 10). Moreover, her medical records show that, despite her social impairments, Sloat's alleged disability "does not interfere with [her] ability to do active work." (Doc. 1, at 18). We therefore determine that Sloat is qualified to perform the essential functions of her job.

It is on the final prong of the test that Sloat's claim fails. Sloat has undoubtedly suffered an adverse employment action: termination of her employment. However, to state a *prima facie* case of discrimination, any adverse employment decision suffered must be "as a result of discrimination." Gaul v. Lucent Techs., 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). In the instant case, OIT alleges that it terminated Sloat's employment because of her August 31, 2018 workplace behavior. Specifically, the October 12, 2018 termination letter to Sloat states that Sloat "engaged in inappropriate behavior when [she] threw a cup at the wall of [her] worksite… yelled and cried as [she] expressed [her] dissatisfaction with [her] position… [and] yelled at [an] Analyst and used profanity." (Doc. 27-6, at 2). This justification does not bear on Sloat's disability or her requested accommodations. Rather, OIT cites its "Workplace Violence" policy, which would apply to Sloat regardless of the existence of her disability. (Doc. 27-6, at 2).

For her part, Sloat does not contest OIT's reason for her termination except to attribute her behavior to OIT's failure to provide reasonable accommodations and decry the company's policy against violence as overbroad. (Doc. 30, at 4-5, 8). Thus, an integral part of Sloat's ADA claim is her assertion that her admitted workplace misconduct was caused by the defendant's ADA violations. However, this causal connection urged by Sloat founders upon an immutable fact. We first note that Sloat

submitted her most detailed accommodation request—which was the first to assert a need for either an onsite job coach or a female presence during supervisory meetings—on September 6, 2018, six days *after* her August 31, 2018 actions. (Doc. 1, ¶ 26; Doc. 1, Ex. D, at 17). Additionally, at no point does Sloat allege that she told her supervisors of the full nature of her disability; indeed, the evidence she presents suggests only offhand references to "anxiety." (Doc. 1, ¶ 13; Doc. 27-1, at 69; Doc. 27-3, at 73). Thus, it would be unreasonable to expect Sloat's employers to accommodate a disability they knew nothing about. Simply put, given that Sloat's workplace misconduct precedes her claims for accommodation the causal inference she invites us to draw simply cannot be sustained.

But even if Sloat's request for accommodations had been submitted prior to August 31, 2018, she did not request the accommodations she now suggests would have alleviated her symptoms. Sloat claims that it was "highly triggering to her to be supervised by two males, with no female in her chain of command." (Doc. 30, at 4). However, Sloat only requested that a female be present during one-on-one meetings with her supervisor, and Katie Hann was a female in Sloat's direct chain of command. Similarly, Sloat argues that OIT should have "[ensured] that a female 'job coach' be present at any disciplinary meeting." (Doc. 30, at 4). Yet, Sloat's request for a job coach did not include the job coach's presence at disciplinary meetings, nor did it specify that the job coach had to be of a certain gender. Thus,

Sloat's accommodation requests have shifted and changed over time in the course of this litigation, a factor which further complicates any effort at accommodation of those requests. Therefore, Sloat's supervisors could not have reasonably been expected to anticipate her changing needs without request, much less accommodate them. Accordingly, Sloat has not presented evidence from which we could even infer that her termination was causally connected to her disability.

However, even if Sloat had presented sufficient evidence to establish a *prima facie* case of discrimination, the burden then "shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 500 (3d Cir. 1997) (citing <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 n.2 (3d Cir. 1997)). Notably, "the employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action].'" <u>Id.</u>, at 500-01 (citing <u>Woodson</u>, 109 F.3d at 920 n.2). On this score, OIT alleges that Sloat's termination was based on her violation of its "Workplace Violence" policy, which constitutes a legitimate, nondiscriminatory reason for its actions. It is well-settled that disciplinary and discharge decisions by an employer that are grounded upon workplace violence policies constitute "a legitimate, nondiscriminatory reason in support of its decision to terminate" an employee. <u>Proudfoot v. Arnold Logistics, LLC</u>, 59 F. Supp. 3d 697,

704 (M.D. Pa. 2014), aff'd, 629 F.App'x 303 (3d Cir. 2015). As the Third Circuit

has noted on this score:

> Committing violence in the workplace is clearly a legitimate, non-discriminatory reason for terminating an employee. See Clark v. Runyon, 218 F.3d 915, 919 (8th Cir. 2000) ("Both actual violence against fellow employees and threats of violence are legitimate reasons for terminating an employee."); see also Johnson v. Hondo, Inc., 125 F.3d 408, 415 (7th Cir.1997).

Exantus v. Harbor Bar & Brasserie Rest., 386 F. App'x 352, 355 (3d Cir. 2010). See

also Wright v. Providence Care Ctr., LLC, No. 2:17-CV-00747-NR, 2019 WL

4643592, at *8 (W.D. Pa. Sept. 24, 2019), aff'd, 822 F. App'x 85 (3d Cir. 2020).

Therefore, OIT's termination decision is undeniably grounded upon a legitimate

nondiscriminatory consideration.

Thus, the burden would shift back to Sloat "to convince the factfinder both

that the employer's proffered explanation was false, and that [discrimination] was

the real reason for the adverse employment action." Krouse, 126 F.3d at 501.

However, Sloat offers no evidence to this effect; rather, she offers reasoning for and

openly admits her own actions. Because we conclude Sloat has not presented a

*prima facie* case of discrimination or evidence of pretext for her termination under

the ADA, and further find that the defendant has proffered a legitimate, non-discriminatory justification for this termination based upon Sloat's violation of

office workplace violence policies which has not been rebutted by the plaintiff,

summary judgment is appropriate on the plaintiff's discrimination claim.

18

### 2.  **The Plaintiff Has Not Presented a Sufficient Case of ADA Retaliation.**

Sloat next argues that OIT retaliated against her under the ADA in terminating her employment. We disagree.

The standard for ADA retaliation claims is well established in the Third Circuit:

> To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action… If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action.

Krouse, 126 F.3d at 500 (citations omitted).

In turning to the *prima facie* case, it is undisputed that Sloat's requests for accommodations were protected employee activity under the ADA. See Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010) ("Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation"). Sloat's termination also took place after her submission of these requests, satisfying the second prong.

We conclude, however, that Sloat has not established a causal connection between her requests for accommodation and her termination. Sloat again does not

deny her behavior; rather, she claims that she "was terminated for exhibiting symptoms of her medical condition that likely would not have surfaced had her request not been heard, and unreasonably denied." (Doc. 30, at 7). The requests Sloat references are allegedly "for a female HR representative, and a job coach, to be present at disciplinary meetings." (Id.) However, as previously discussed, Sloat's only accommodation request with any mention of a female presence or a job coach was submitted after her August 31, 2018 workplace misconduct. Similarly, the request in question asked only for a female representative's presence in one-on-one and supervisory, rather than disciplinary, meetings; asked only for the general presence of a job coach, rather than specifically in disciplinary meetings; and was granted as to each of the relevant requests. Accordingly, we cannot conclude that Sloat has demonstrated that her termination was causally connected to her accommodation requests. Nor can she show a failure to heed those requests since these requests, which  were submitted after the alleged retaliatory action, were granted.

Even if Sloat were able to prove a causal connection between her requests and her termination, OIT presents a legitimate and non-retaliatory reason for its actions. Under the ADA, a defendant-employer satisfies its burden with "any legitimate reason for [an adverse employment action]." Krouse, 126 F.3d at 500-01 (quoting Woodson, 109 F.3d at 920 n.2). The burden then falls on the plaintiff to rebut the

proffered reason as false. Id., at 501. As we have noted, OIT claims that Sloat's behavior on August 31, 2018 violated its policy against workplace violence, which represents a legitimate nonretaliatory reason for its termination of Sloat's employment. Exantus, 386 F. App'x at 355; Wright, 2019 WL 4643592, at *8; Proudfoot, 59 F. Supp. 3d at 704. Sloat's arguments that her "behavior posed no legitimate threat to anyone" do not negate her admitted violation of this policy. (Doc. 30, at 8). Likewise, her belief that the policy is "so broadly written as to be almost meaningless" does not raise any argument of discrimination or retaliation. (Id.) This argument, which is little more than a *post hoc* critique of OIT's workplace violence policy ignores the fact that "the employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action].' " Krouse, 126 F.3d at 500-01.

Because Sloat has not met her burdens of presenting either a *prima facie* case of retaliation or advanced any valid argument against OIT's proffered reasoning for her termination, her claims of retaliation fail. We will therefore grant summary judgment as to Sloat's claim of ADA retaliation.

### 3. **OIT Reasonably Accommodated Sloat's Requests.**

Sloat's final argument states that OIT failed to accommodate her disability as requested. However, after a review of the record, we conclude that OIT did, in fact, accommodate the vast majority of Sloat's accommodation requests. Moreover, and

significantly, Sloat actually refused OIT's offer to further accommodate her and give her an alternate schedule. Accordingly, this claim fails.

Specifically, it appears that Sloat submitted an accommodation form on September 6, 2018, requesting that a job coach be permitted onsite two to three times a month; that "a female manager or supervisor [be present] during one-on-one meetings with her supervisor"; that a fan be permitted at her workspace to create white noise; and that she be allowed an alternate work schedule that permitted her to attend her weekly therapy appointment. (Id., ¶ 26; Doc. 1, Ex. D, at 17). On September 21, 2018, OIT granted "all but the fourth of the accommodations." (Doc. 1, ¶ 27). However, in addressing the fourth request, OIT offered Sloat an alternate schedule that would allow her an hour-and-a-half-long lunch break to attend her appointment but Sloat declined this alternate schedule. (Doc. 27-1, at 201).

A plaintiff may prove an employer's failure to accommodate their disability by way of a four-part test, showing: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Moore v. CVS Rx Servs., Inc., 142 F.Supp.3d 321, 335 (M.D. Pa. 2015).

In the instant case, we determine that Sloat has met the first two prongs of the test. There is evidence that Sloat submitted medical documentation of her disability to OIT'S Human Resources department, thereby informing OIT of her disability. (Doc. 1, Ex. D, at 18). It also remains undisputed that Sloat submitted a request for accommodation that she did not withdraw.

Regarding the third prong, however, we cannot conclude that OIT failed to make a good faith effort to accommodate Sloat. Sloat herself admits that three of the four accommodations she requested were fully met. (Doc. 1, ¶ 27). Furthermore, the fourth request—for an alternate work schedule that would allow Sloat to attend her weekly therapy appointments—did not remain unmet simply because OIT declined her specific request but proposed an alternative accommodation. Rather, Sloat herself  admits she declined an offer of an alternate schedule that would meet this request. (Doc. 27-1, at 201). This admission directly contradicts the notion that OIT failed to make a good faith effort to accommodate Sloat. We therefore conclude that Sloat cannot meet the above test for failure to accommodate under the ADA.

In sum, Sloat has failed to present evidence that would demonstrate a genuine issue of material fact to preclude summary judgment on her discrimination, retaliation, and failure to accommodate claims. Rather, the record indicates that Sloat's employer attempted to accommodate her after being informed of her disability, but ultimately OIT terminated Sloat's employment after she violated the

workplace violence policy. Accordingly, we will grant the defendant's motion for summary judgment.

### IV.   <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, the defendants' motion for summary judgment (Doc. 26) will be GRANTED.

An appropriate order follows.

s/ <u>*Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: November 29, 2021